JOHN J. DUFFIELD AND OTHERS *vs.* ERASTUS BRAINERD AND OTHERS.

Several persons who were tenants in common of certain quarry lands formed a copartnership in 1850 to carry on the quarrying business, the several partners putting in their interests in the quarry lands, and having a corresponding interest in the copartnership. One of the interests thus put in was owned by *M,* a widow, for life, and subject to her life estate, by *P* her daughter, and the interest in the copartnership was owned by them in the same manner. By the partnership agreement the copartnership was to continue so long as a majority in interest should desire. The business was continued, by assent of all parties, through several changes by death and succession, until 1872, when *M* died, giving by will all her interest, which was mainly her share of the undivided profits, to her grandchildren, who with her administrator were the petitioners. These profits had been very large, but instead of being divided had

Duffield *v.* Brainerd.

been invested in other quarry lands, which had been in part worked. After 1872 the business was still carried on as before, under the management of *B*, who had been the principal manager from the first. In 1874 the petitioners, having previously demanded of *B* an account and payment of the moneys due them from the copartnership, brought a bill in equity praying that all the property bought with the profits of the business previous to the death of *M* might be sold, and their share of the money paid over to them, that an account be taken of all the copartnership dealings, and that a receiver be appointed. The petition averred that the petitioners, by reason of the deaths of members of the copartnership and the confusion of interests, were unable to say whether the copartnership was dissolved, but that they believed and therefore averred that it was dissolved. *B*, as manager of the business, had incurred large personal obligations, and a large amount of property taken by him for debts due the copartnership had greatly depreciated. Held—

1. That the copartnership was to be regarded as continuing by consent of the parties succeeding to the interests of members who had died, and as still existing.

2. That the allegation that the petitioners were unable to say whether there had been a dissolution or not, but that they believed and therefore averred that the copartnership was dissolved, was not an averment that the copartnership had been dissolved by a withdrawal of the assent under which it had been continued and a demand for a dissolution.

3. That the demand by the petitioners of an account from *B*, and of payment of their share of the profits, did not constitute a demand for a dissolution.

4. That the petitioners were not entitled to demand in cash the value of their interest, inasmuch as they had consented to let the business go on under the management of *B*, and having taken their chance for profits from the use of their share by the copartnership they were to share the risks of loss from the continuance of the business.

5. That the petitioners could effect a dissolution of the copartnership by giving distinct notice to *B* that they should not longer consent to its continuance, and should hold him accountable as a surviving partner for the further use of their share of the copartnership property.

BILL IN EQUITY for a disclosure and account, the payment of moneys found due, and the appointment of a receiver of partnership property; brought to the Superior Court in Middlesex County. The facts were found at great length by a committee and the case reserved for advice. The disposition made of the case by this court renders it unnecessary to state the facts more fully than they are given in the opinion. The principal points argued by the counsel become also for the same reason unimportant.

*F. Chamberlin* and *E. S. White*, for the petitioners.

*R. D. Hubbard, R. G. Pike, D. Chadwick,* and *S. L. Warner,* for different respondents.

PARDEE, J.   In 1850 Erastus Brainerd, Erastus Brainerd, Jr., Frederick Hall, Joseph Stancliff, Mary M. Brainerd and Ellen M. Duffield, (the two latter by agent and trustee,) entered into a written copartnership agreement for the purpose of carrying on the business of quarrying and selling stone, for such length of time as a majority in interest of the partners should request and demand.   At this time they were the owners of cattle, tools, carts, &c., of the value of $50,000, and quarry lands of the value of $235,000, and this property constituted their capital stock, and was owned in the following proportions, viz: Erastus Brainerd, five-sixteenths; Erastus Brainerd, Jr., two-sixteenths; Mary M. Brainerd and Ellen M. Duffield, five-sixteenths; Frederick Hall, two-sixteenths; Joseph Stancliff, two-sixteenths.   The said Mary M. Brainerd had an estate for life in an undivided interest in the real estate, as widow of Silas Brainerd, and the said Ellen M. Duffield, who was her daughter, had an estate in fee in the same interest subject to her mother's life estate, and the interest in the copartnership held by them and representing this real estate, was held by them in the same way.

Frederick Hall died in 1867; Erastus Brainerd in 1861; Joseph Stancliff in 1870; Mary M. Brainerd in 1872.   Erastus Brainerd, Jr., and Ellen M. Duffield, now Ellen M. Pike, and daughter of said Mary, still survive; the petitioners are the children of Ellen M. Pike, joining with William J. Osborne, administrator upon the estate of the said Mary; the respondents are Erastus Brainerd, Jr., and the representatives of the several deceased partners.

Notwithstanding these successive deaths the copartnership business has been continued to the present time by the managers without interruption or change, and without objection on the part of the representatives or heirs of any deceased partner, except that the administrator upon the estate of Mary M. Brainerd called upon Erastus Brainerd, Jr., then and still the chief manager, for an account and payment of the money due to that estate, and in November, 1874, brought

this petition in equity. In it the petitioners allege, among other things, that the said Mary M. Brainerd was entitled during her life to five forty-eighths of all the rents and profits accruing from said business, and that by the terms of the copartnership these were to be divided; and that although these profits were in 1871 more than $97,000, in 1872 more than $120,000, in 1873 more than $78,000, and prior to 1871 were $300,000, yet the managers have refused to pay to the petitioners their proportionate share thereof, and have invested the same in the purchase of property not needed for the successful working of the quarries and have not used them in the legitimate business of the partnership.

They also allege that, by the death of sundry partners and other changes, and by the division and confusion of interests, they are unable to say whether the copartnership has been dissolved or not, but that they believe, and therefore say, that it has been dissolved and terminated.

They also pray that if it should appear that the copartnership has been dissolved, the court will order an account of its transactions during the time of Mary M. Brainerd's life, and that the respondents be directed to pay to the petitioners such sums as shall be due to her estate and to the said legatees, and that some proper person be appointed a receiver, with authority under the direction of the court to sell that part of the property which is within this jurisdiction, ascertain the value of that which is without, to collect the money due to the partnership, and hold the same subject to the order of the court.

After the death of any partner his representatives have joined with the surviving partners in permitting and requesting Erastus Brainerd, Jr., who has been the chief manager of the partnership from its organization to this present, to continue the business as that of a partnership in form and fact; no one of them declared a dissolution, or asked the court to enforce one; they severally accepted their respective proportions of profits specifically as dividends earned by a continuing partnership, and not as a percentage of assets returned after a final settlement of partnership affairs. And, although

the representatives of Mary M. Brainerd made a demand upon the chief manager for an account and for the amount due the estate of said Mary M., and received for answer that he could not tell how to state such an account or what was due, they rested upon that answer; they interposed no objection to a continuance of the business by a partnership; they permitted Mr. Brainerd to believe, and act upon the belief, that they would not insist upon any rights other than those to which they would be legally entitled as partners; they suffered him to bear the weight of individual obligations to the extent of $128,000 for the protection of the property, knowing that they had given him reason to believe that they would only demand their share of what should remain after these obligations had been discharged, and after a final settlement of the business as that of a partnership continued to a time thereafter to be specifically fixed. As between themselves and Mr. Brainerd they are to be held as having, in consideration of his individual advancements and continued services for the protection of their common interests, agreed with him to postpone the enforcement of their legal right to a dissolution as of the day of Mrs. Brainerd's death to a day to be named by them in the future, and as having notified him that they had elected that he should conduct the business as that of an uninterrupted partnership, and to accept on such future day, of the assets which should then remain, such proportion as the law of partnership would give them; they are to be held as having agreed not to hold him solely accountable for all possible losses as a surviving partner wrongfully using and exposing their property against their will to the hazards of the partnership business.

Having thus induced him to manage the business as one of continuing partnership and entitled themselves to the greater profits which might result from that relation, they should likewise share with him its risks and obligations, until they shall give him distinct and precise notice that from and after a day to be named by them they reverse their previous election that the partnership should continue, and that from thenceforth they shall hold him accountable as a surviving partner

wrongfully continuing the use of their share of the partnership property.

From the service of such notice the general rule of law terminating a partnership upon the death of a member, the operation of which in this particular case has been restrained by the petitioners, will come into action, and they will be entitled to the aid of a court of equity in enforcing it. From that date it will be the duty of the managers to close the business of the partnership as speedily as a proper regard for the interests of all concerned will permit; and when all debts are paid the assets remaining should be divided as if upon the day of the notice the copartnership had expired by an express limitation incorporated in the articles of its formation.

We do not regard the petition as such· an unequivocal declaration of their desire to reverse their original election as will justify us in saying that the service of it shall stand for the notice above indicated; for in it the petitioners admit that they are unable to say either that the partnership has or that it has not been dissolved; only, that they believe, and therefore aver ·the former. This is to be interpreted as suggesting with hesitation that possibly the law of the events mentioned may have overborne their will in the matter and forced upon them a dissolution, contrary to their desire for a continuance of the partnership.

In the fourth paragraph they allege that the copartnership continued to the death of Mrs. Brainerd, notwithstanding the previous deaths of partners, and in the sixth they request the court to order the sale of such property paid for from undivided profits as is not required for the proper use of the business of the partnership and a division of the proceeds thereof; indicating thereby a desire not to bring that business to a termination.

As we are of opinion that the petitioners are not entitled to a decree declaring the partnership to have been dissolved at the death of Mrs. Brainerd, and ordering a division of the assets upon the basis of the manager's inventory and valuation made in March, 1873, for the ordinary purposes of the partnership; and as the finding does not support the allega-

tion as to the wrongful investment of profits, and furnishes no justification for the interference of the court in the matter of hastening a division thereof, we advise the Superior Court that, upon the allegations in the petition, the petitioners are not entitled to the relief prayed for; but, we also advise that court to continue the petition upon the docket until the term succeeding that at which this advice is communicated to it, for the purpose of giving opportunity to the petitioners to file, if they then are able and desire so to do, a supplemental bill containing allegations to the effect that they have given to the respondent, Erastus Brainerd, the notice suggested in the foregoing opinion, and that he thereafter conducted the business as that of a continuing partnership.

In this opinion the other judges concurred.